**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **TIM HAMON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No.:  14-CV-00161-FHS** |
| **FARMERS INSURANCE COMPANY, INC.,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**REDACTED**
**PLAINTIFF TIM HAMON'S OPPOSITION TO
DEFENDANT FARMERS INSURANCE COMPANY, INC.'S
MOTION FOR SUMMARY JUDGMENT**

Jonathan Waller, ASB 0725-L53J
Waller Law Office, PC
2001 Park Place Suite 900
Birmingham, AL 35203
jwaller@waller-law.com
(205) 313-7330
(205) 313-7331 (direct)

And

Mark H. Colbert, OBA #10045
Colbert Law Offices
200 Stanley Street S.W.
P.O. Box 2169
Ardmore, Oklahoma 73402
colbertlawoffices@yahoo.com
(580) 226-1911
(580) 226-1907 (facsimile)

Attorneys for Plaintiff Tim Hamon

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    A.  Plaintiff's Statement of Undisputed Facts. . . . . . . . . . . . . . . . . . . . . . . . . . 6

    B.  Plaintiff's Response to Farmer's Statement of Facts . . . . . . . . . . . . . . . . 16

III.  LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    A.  Plaintiff's Breach of Contract Claim Is Due To Be Heard By the Jury . . . . . . 20

    B.  Genuine Issues of Fact Exist Regarding Farmers' Unreasonable Conduct
        Precluding Summary Judgment on Plaintiff's Bad Faith Claim. . . . . . . . . . . . 23

    C.  Genuine Issues of Fact Exist Regarding Plaintiff's Fraud-Based Claims
        Claims Against Farmers, Precluding Summary Judgment . . . . . . . . . . . . . . . . 29

    D.  Plaintiff's Conspiracy Claim Is Due To Be Determined By the Jury. . . . . . . . 30

    E.  Whether to Award Punitive Damages Is a Question of Fact for the Jury. . . . . . 30

IV.  CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

# TABLE OF AUTHORITIES

Page

Cases

*Aranda v. Ins. Co. of N. America*, 748 S.W.2d 210, 212-13 (Tex. 1988)....................................27

*Arnold v. National County Mutual Fire Insurance Co.*, 725 S.W.2d
   165, 167 (Tex. 1987)............................................................................................27

*Baker v. Union Fidelity Life Ins. Co.*, 2010 WL 2721387, at *7 (N.D.Okla.)..........................26

*Barnes v. Oklahoma Farm Bureau Mutual Ins. Co.,* 11 P.3d 162, 175
   (Okla. 2001) .......................................................................................23, 25, 26, 33

*Beers v. Hillory,* 241 P.3d 285, 295 (Okla. Civ. App. 2010)..........................................26

*Benson v. Leaders Life Ins. Co.,* 339 P.3d 843 (Okla. 2013)........................................25

*Buzzard v. Farmers Ins. Co.*, 824 P.2d 1105, 1109 (Okla. 1991)..................................27, 30, 33

*Capstick v. Allstate Ins. Co.*, 998 F.2d 810, 823 (10th Cir. 1993)..................................33

*Christian v. American Home Assurance Co.*, 577 P.2d 899, 901 (Okla. 1977)...............27, 29, 30

*Citation Co. Realtors v. Lyon*, 610 P.2d 788, 790 (Okla. 1980)........................................30

*City National Bank and Trust Co. v. Jackson National Life Ins.*,
   804 P.2d 463, 468 (Okla. 1991)........................................................................25

*Claborn v. Washington Nat'l Ins. Co.*, 910 P.2d 1046, 1049 (Okla. 1996)................................25

*Conti v Republic Underwriters Ins. Co., 782 P.2d 1357 (Okla. 1989)*........................................24

*Davis v. Mid-Century Ins. Co.,* 2000 WL 1140302 (W.D. Okla.)................................................33

*Guajardo v. Liberty Mutual Ins. Co.*, 831 S.W.2d 358, 365 (Tex. App. 1992).............................26

*Haberman v. the Hartford Ins. Group*, 443 F.3d 1257, 1262-63 (10th Cir. 2006)..................24, 33

*Hale v. A.G. Ins. Co.*, 138 P.3d 567, 571-72 (Okla. Civ. App. 2006) ......................................28

*Johnson v. Government Employees Ins. Co.,* 2008 WL 3927469, at *4 (W.D.Okla.)..................26

*Kirkes v. Guideone Mutual Life Ins. Co.,* 2009 WL 395254, at *5 (W.D.Okla.) ........................26

*McCorkle v. Great Atlantic Ins. Co.*, 637 P.2d 583, 587 (Okla. 1981)......................24, 25, 27, 29

*McCoy v. Oklahoma Farm Bureau Mutual Ins. Co.*, 841 P.2d 568 (Okla. 1992) ......................26

*McLean v. S.W. Casualty Co.*, 159 P 660 (Okla. 1916)....................................................31

*Miller v. Liberty Mutual Fire Ins. Co.,* 191 P.3d 1221, 1227 (Okla. Civ. App. 2008)................28

*Newport v. USAA, supra,* 11 P.3d 190, 204 (Okla. 2000) ..........................................passim

*Peters v. American Income Life Ins. Co.,* 77 P.3d 1990, 1097 (Okla. Civ. App. 2002) ..............25

*Price v. Mid-Continent Casualty Co.*, 41 P.3d 1019, 1021 (Okla. Civ. App. 2001) ..................25

*Roesler v. TIG Ins. Co.*, 251 Fed. Appx. 489, 498 (10th Cir. 2007)..........................................28

*Rose v. Prudential,* 992 F.2d 1223, at *2 (10th Cir. 1993)........................................27, 28

*Sigma Resources, Inc. v. Norse Exploration, Inc.,* 852 P.2d 764 (Okla. App. 1993)................32

*Spaeth v. Union Oil Co. of Calif.,* 762 F.2d 865 (10th Cir. 1985)..........................................33

*Springfield Fire & Marine Ins. Co.,* 156 P. 673 (Okla. 1916)..............................................28

*St.Louis-San Francisco Ry. Co.*, 82 Okla. 6 (1921)..........................................................22

*State ex rel. Polution Control Coordinating Board v.*
   *Kerr McGee Corp.*, 619 P.2d 658, 865-66 (Okla. 1980) ................................................33

*State Farm Mutual Ins. Co.*, 2006 WL 2265505, at *6 (N.D. Okla.) ........................................26

*Terrell Co. v. Davis,* 77 Okla. 302 (1920) ..............................................................22

*Thompson v. Shelter Mutual Ins.,* 875 F.2d 1460, 1462 (10th Cir. 1989) ..............................25, 30

*Tomlinson v. Combined Underwriters Life Ins. Co.,* 708 F.Supp.2d
    1284, 1294 (N.D.Okla.2010) ................................................................................. 26
*Walker v. Progressive Direct Ins. Co.,* 472 Fed. Appx. 858 (10th Cir. 2012)............................ 28
*Wirtz v. State Farm Mutual Automobile Ins. Co.,* 2009 WL 2163617, at *6 (W.D.Okla) .......... 26

Statutes

23 Okla. Stat. § 21................................................................................................................... 22
23 Okla. Stat. § 9.1.................................................................................................................. 32
36 Okla. Stat. § 3629......................................................................................................... 21, 23

<u>**PLAINTIFF TIM HAMON'S OPPOSITION TO DEFENDANT FARMERS INSURANCE
COMPANY, INC.'S MOTION FOR SUMMARY JUDGMENT**</u>

COMES NOW Plaintiff Timothy Hamon ("Plaintiff" or "Hamon"), pursuant to Fed. R.

Civ. P, Rule 56, and opposes Defendant Farmers Insurance Company, Inc.'s ("Farmers") motion

for summary judgment [Doc.165]. As demonstrated, *infra*, genuine issues of material fact exist

with regard to each of Plaintiff's claims against Farmers, rendering summary judgment

improper.[1]  As to the bad faith claim, it is undisputed that Farmers unpaid the Hamon claim by

more than $7,000.00 on February 4, 2014.  The issue is whether Farmers' conduct resulting in

the underpayment gives rise to a permissible inference of bad faith.  As demonstrated, *infra,*the

answer is plainly in the affirmative.

## I.    INTRODUCTION

It is undisputed that Farmers adjusted the Hamon claim based on Mitchell International

Inc.'s ("Mitchell") WorkCenter Total Loss ("WCTL") valuation of the Hamon vehicle (the

"Hamon Report").  That valuation was in the amount of $9,732.86.  The WCTL system is a joint

project of Mitchell and J.D. Power and Associates ("Power").  Mitchell sent its initial WCTL

valuation to Farmers on January 10, 2014.

On that same day, Mitchell also provided Farmers with an NADA valuation in the

amount of $17,101.95.  Both valuations were in the claim file when Farmers' Adam Wheeler

adjusted the Hamon claim. Wheeler elected to completely disregard the NADA valuation, which

was more than $7,000.00 above the Hamon Report. The Oklahoma total loss statute, 36 Okla.St..

§ 1250.8, expressly references NADA as a recognized method to value total losses.  Farmers had

---

[1] Plaintiff's Motion for Partial Summary Judgment on his breach of contract claim [Doc.159] is
also pending before the Court.

trained Wheeler to use NADA as an evaluation tool. There is no excuse for Wheeler's admitted disregard of the NADA valuation.[2]

The Hamon vehicle was a 2004 Chevrolet Silverado with a diesel engine (the "Vehicle" or "Truck"). Farmers' bad faith decision to disregard the NADA valuation is compounded by Wheeler's simultaneous refusal to properly utilize comparable vehicles. As Hamon admittedly complained to Wheeler, the Hamon Report includes six "comparable" vehicles, five of which did not have diesel engines. The diesel engine adds more than $5,000.00 to the value of a 2004 Chevrolet Silverado. Wheeler rejected Hamon's complaint about the use of gas vehicles as "comparables" and made no investigation regarding prices of comparable diesel vehicles.

As a result of the gross undervaluation of the Vehicle, Plaintiff Hamon filed suit against Farmers in Oklahoma state court on February 25, 2014. Only then did Farmers contact a company known as ClaimSolution to request an appraisal. Farmers admits that if Hamon had not filed suit, Farmers would not have contacted ClaimsSolution and would not have made the additional payment to Hamon, exceeding $7,000.00. In late June, 2014, ClaimSolution prepared an appraisal of the Truck for Farmers in the amount of $17,101.95. This valuation is remarkably consistent with the NADA valuation which Farmers had in its claim file back in January 2014. Both exceed $17,000.00 and are more than $7,000.00 higher than the WCTL valuation. The ClaimSolution Appraisal includes an upward adjustment in the amount of $5,450.00 for the diesel engine in the Truck.

Thereafter, in October 2014, after nearly 7 months of litigation, Farmers finally paid the Hamon claim based on the ClaimSolution appraisal of $17,101.95. Farmers subsequently stipulated that $17,101.95 represented the actual cash value ("ACV") of the Truck. [Doc.66].

---

[2] In early 2014, Farmers also literally asked Mitchell to "turn off" and stop sending NADA valuations with the WCTL Reports. The inference is obvious.

Thus, Farmers has judicially admitted that the $9,732.86 valuation in the Hamon Report was more than $7,000.00 too low.[3]

The condition adjustments are equally as egregious as ignoring NADA and the failure to use comparable vehicles with diesel engines. The Hamon Report made a deduction for condition adjustments in the amount of $2,496.59. The Oklahoma Total Loss statute requires that, if an insurer uses an alternative method to value a total loss, adjustments must be "measurable, discernible, itemized and specified".

The condition adjustments in the Hamon Report facially are not itemized as to dollar amount, but are aggregated in the total stated deduction. The adjustments are derived from the observations of the condition of the Hamon vehicle by the Farmers' field adjuster, Darric Taylor, who characterized several subcomponents of the Truck as being in "poor" or "fair" condition. See Hamon Report, Exh. 1, at 4.

Celeste Horton of ClaimSolution personally inspected the Truck and took pictures. ClaimSolution's appraiser, Ross Chandler, viewed the pictures and made the $17,101.95 ClaimSolution valuation. They both testified that the Truck was in clean condition for a vehicle of that age and rated the "interior", "exterior", and "mechanical" as average. This obviously contradicts the "fair" and "poor" conditions purportedly observed by the Farmers field adjuster, Taylor, in the Hamon Report. Indeed, the ClaimSolution Appraisal, which Farmers has stipulated to be a correct valuation, made a total condition adjustment of only $450.00.[4]

---

[3] The payments to Hamon in February and October are described in the Hamon Affidavit, Exh. 20. The total underpayment was $7,608.59. See Exh. B to Hamon Affidavit, Exh. 20.

[4] Farmers' disregard of the value of the diesel engine ($5,250.00) and the improper condition adjustments resulted in the undervaluation of the Truck by more than $7,000.00.

3

Worse, the WCTL methodology for making condition adjustments is purportedly based upon data which Manheim Auto Auction provides to Mitchell. That position is fatally flawed. The Manheim designated representative testified unequivocally that the Manheim data includes only a rating for the overall condition of the vehicle. Manheim does not rate its auctioned vehicles at the component or subcomponent level. Moreover, the Manheim values are wholesale, not retail.

Neither Power nor Mitchell have provided any support for the condition adjustment methodology other than the Manheim data. That data obviously cannot support the Hamon condition adjustments or the condition adjustments in any other WCTL total loss valuation for that matter.[5]

Farmers failed to properly investigate WCTL and failed to obtain proper documentation from Power and Mitchell that WCTL was a valid valuation method before embarking on the "pilot" program.[6] Farmers' duty to properly adjust first party total loss claims is non-delegable.

Farmers "investigation" of WCTL was limited to Trotter's conversation at a bar during an industry meeting with a State Farm representative, and Trotter's conversation with fewer than

---

[5] Plaintiff has submitted the Affidavit of Dr. Norma Hubele, a statistical expert, which explains in detail why the five steps of WCTL are statistically invalid. Exh. 5. The five steps are referenced on page 8 of the Hamon Report. This explanation is expanded upon in Dr. Hubele's prior Affidavit, which is attached as Appendix C to the current Affidavit. Exh. 5. Appendix C explains in detail the invalidity of the WCTL condition adjustments and the other five steps of the WCTL methodology.

[6] In its Statement of Facts at 5-6, Farmers references a report by MIT professor Dr. Arnold Barnett (the "Barnett Report"). Any implication that Farmers relied on the Barnett Report in selecting or deciding to use WCTL is absolutely false. Clay Trotter was Farmers' designated representative on its investigation of WCTL. Trotter admitted, in behalf of Farmers, that he never saw the Barnett Report until several weeks before his first deposition on May 26, 2015, long after the Hamon loss and after the expiration of Farmers' "pilot project" with Mitchell. There is no evidence that anyone at Farmers ever reviewed or relied on the Barnett Report before the "Pilot" Program ended in early 2014.

4

10 body shop owners.  Farmers accepted WCTL at face value based upon the money it would save Farmers (which turned out to be almost $2 million in Oklahoma).

Rather than properly investigate WCTL, Farmers was content with a detailed comparison of how much money Farmers would save by using WCTL rather than NADA (more than $600.00) or CCC (more than $400.00). In this regard, as Dr. Ryles' Affidavit notes[7], Farmers knows full well how to secure information validating the methodology of a third party vendor. Farmers' designated representative, Trotter, testified that after the conclusion of prior litigation against Farmers, involving the CCC total loss product, Farmers undertook a detailed study of the CCC methodology.  Farmers demanded extensive documentation from CCC.  Trotter admitted that Farmers simply decided not to request such data from Mitchell.  The numerous respects in which Farmers failed to properly investigate the WCTL methodology are discussed in detail in the Ryles Affidavit.

Dr. Ryles also explains how, in adjusting the Hamon claim, Farmers blatantly disregarded the "red flags", specifically, the non-comparable gas vehicles, the NADA valuation, and the WCTL's use of "list prices" to estimate projected "sold" prices, rather than actual selling prices, and that this conduct was not in good faith.

In short, there is overwhelming evidence that would authorize the jury to infer and find that WCTL is invalid, that Farmers failed to properly investigate WCTL, that Farmers used WCTL to save money as compared with NADA and CCC, and that Farmers did not adjust the Hamon claim in good faith.

---

[7] Dr. Timothy Ryles, Plaintiff's bad faith expert, has submitted an affidavit, Exh. 4, which details Farmers' failure to investigate and bad faith adjustment of the Hamon claim.

## II.      STATEMENT OF FACTS

### A.      Plaintiff's Statement of Undisputed Facts[8]

[9]

**REDACTED AS CONFIDENTIAL INFORMATION
FILED UNDER SEAL PURSUANT TO
COURT ORDER [DOC. 56]**

---

[8]   REDACTED AS CONFIDENTIAL INFORMATION FILED UNDER SEAL PURSUANT TO COURT ORDER [DOC. 56]

[9]   REDACTED AS CONFIDENTIAL INFORMATION FILED UNDER SEAL PURSUANT TO COURT ORDER [DOC. 56]

**REDACTED AS CONFIDENTIAL INFORMATION**
**FILED UNDER SEAL PURSUANT TO**
**COURT ORDER [DOC. 56]**

**REDACTED AS CONFIDENTIAL INFORMATION
FILED UNDER SEAL PURSUANT TO
COURT ORDER [DOC. 56]**

**REDACTED AS CONFIDENTIAL INFORMATION**
**FILED UNDER SEAL PURSUANT TO**
**COURT ORDER [DOC. 56]**

**REDACTED AS CONFIDENTIAL INFORMATION
FILED UNDER SEAL PURSUANT TO
COURT ORDER [DOC. 56]**

**REDACTED AS CONFIDENTIAL INFORMATION
FILED UNDER SEAL PURSUANT TO
COURT ORDER [DOC. 56]**

**REDACTED AS CONFIDENTIAL INFORMATION
FILED UNDER SEAL PURSUANT TO
COURT ORDER [DOC. 56]**

**REDACTED AS CONFIDENTIAL INFORMATION**
**FILED UNDER SEAL PURSUANT TO**
**COURT ORDER [DOC. 56]**

**REDACTED AS CONFIDENTIAL INFORMATION**
**FILED UNDER SEAL PURSUANT TO**
**COURT ORDER [DOC. 56]**

**REDACTED AS CONFIDENTIAL INFORMATION**
**FILED UNDER SEAL PURSUANT TO**
**COURT ORDER [DOC. 56]**

**REDACTED AS CONFIDENTIAL INFORMATION
FILED UNDER SEAL PURSUANT TO
COURT ORDER [DOC. 56]**

10

**B.      Plaintiff's Response to Farmer's Statement of Facts.**

**REDACTED AS CONFIDENTIAL INFORMATION
FILED UNDER SEAL PURSUANT TO
COURT ORDER [DOC. 56]**

---

10      REDACTED AS CONFIDENTIAL INFORMATION FILED UNDER SEAL PURSUANT TO
COURT ORDER [DOC. 56]

**REDACTED AS CONFIDENTIAL INFORMATION
FILED UNDER SEAL PURSUANT TO
COURT ORDER [DOC. 56]**

**REDACTED AS CONFIDENTIAL INFORMATION
FILED UNDER SEAL PURSUANT TO
COURT ORDER [DOC. 56]**

**REDACTED AS CONFIDENTIAL INFORMATION
FILED UNDER SEAL PURSUANT TO
COURT ORDER [DOC. 56]**

**REDACTED AS CONFIDENTIAL INFORMATION**
**FILED UNDER SEAL PURSUANT TO**
**COURT ORDER [DOC. 56]**

### III.    LEGAL ARGUMENT

###     A.    Plaintiff's Breach of Contract Claim Is Due To Be Heard By the Jury.

Farmers' Motion with regard to the breach of contract claim is a transparent bootstrap

argument.   Farmers cannot dispute that it breached the contract on February 4, 2014, when it

adjusted Hamon's claim based upon the WCTL valuation of $9,732.86 and refused to pay any

more.   Farmers has subsequently admitted by stipulation that the actual cash value ("ACV"),

which it indisputably was required to pay Hamon under the Policy, was in fact $17,101.95, more

than $7,000 above the WCTL valuation. [11]   Farmers' failure timely to pay the ACV for the

---

[11] It is undisputed, and Farmers expressly concedes in its Motion at 22, that the Policy constitutes
a binding contract formed by Plaintiff and Farmers, required Farmers timely to pay the actual
cash value of the Hamon Vehicle (less any salvage value or deductible). It is undisputed that
Plaintiff performed his obligations under the contract by filing a timely claim under the Policy. It
is undisputed that Farmers offered Plaintiff only $9,077.46 on his total loss claim, which it later

Hamon vehicle as required by the Policy is a patent breach of contract.  Stripped bare, the bootstrap argument by Farmers in its Motion is that, because it made untimely, months-delayed payment of the ACV for the Hamon vehicle, Farmers can "unring" the breach of contract bell. That argument is devoid of colorable support.

The only real issue presented by Farmers on the breach of contract claim is whether Farmers has fully paid Hamon for his statutory and consequential damages resulting from Farmers' breach.  If so, Hamon would not be entitled to recover further *damages* on its breach of contract claim (but would still be entitled to his *attorneys' fees* as a prevailing party under § 3629).  Regardless, Farmers still would not be entitled to a judgment on the breach of contract claim.  In any case, there are additional statutory and breach of contract damages which Hamon is authorized to recover, and which Farmers has not paid, including (1) attorneys' fees and proper (15%) prejudgment interest under § 3629; and (2) interest paid by Plaintiff on the amount of $7,608.59 in connection to his car loan, which reflects the difference between what Farmers paid Plaintiff on February 4, 2014, and the additional payment on October 1, 2014.

As to the first component of additional damages, Plaintiff has extensively addressed his entitlement under 36 Okla. Stat. § 3629 to attorney's fees and additional interest (a full 15%, not merely the 6% paid by Farmers) in his previously filed a motion for partial summary judgment as to Farmers' liability for breach of contract [Doc.159], which is currently pending before the Court.  That motion is based on Farmers' stipulation that the ACV of the Hamon vehicle was $17,101.95, and the undisputed fact that Farmers refused to pay that amount, or anything close to it, when it adjusted Plaintiff's claim. Plaintiff respectfully incorporates by reference the

---

stipulated was not in fact the actual value of the Hamon Vehicle as of the date of the loss. See Stipulation [Doc.66].

arguments and authorities contained in his motion for partial summary judgment as to Farmers'
liability for breach of contract here.

As to the second component of damages, Farmers' suggestion that the additional interest
Hamon had to pay on a car loan as a result of Farmers' underpayment is not a recoverable
element of breach of contract damages, and that Plaintiff is limited to the Policy amount (the
actual cash value of the vehicle), is flatly erroneous.   Under longstanding Oklahoma statutory
and common law, an aggrieved insured is entitled to both actual <u>and</u> consequential damages for
breach of contract:

> For the breach of an obligation arising from contract, the measure of damages, is
> the amount which will compensate the party aggrieved for all the detriment
> proximately caused thereby, or which in the ordinary course of things, would be
> likely to result therefrom.

23 Okla. Stat. § 21; *see also, e.g., St.Louis-San Francisco Ry. Co*., 82 Okla. 6 (1921); *Terrell Co.*
*v. Davis,* 77 Okla. 302 (1920).   Thus, Plaintiff is entitled to recover consequential damages
associated with Farmers' breach, even if Farmers eventually—well into this litigation--   paid the
ACV for the vehicle required by the Policy. [12]   These consequential damages include the interest
paid on the $7,608.59 amount in connection with Plaintiff's car loan, which would not have been
incurred but for Farmers' breach.   See Hamon Affidavit, Exh. 20.   These consequential damages
were the natural and foreseeable consequence of such breach, and the amount of such damages is
readily ascertainable.   Farmers dilatory payment of the ACV only after Plaintiff had to file this

---

[12] Unreasonable delay in paying the full and fair value of a claim, or "low balling" the insured,
constitute breaches of an insurer's obligation to its insured just as readily as nonpayment.
Farmers' untimely payment-- nine months after Hamon notified Farmers' of the loss and many
months after Hamon was forced to file suit-- cannot not "cure" Farmers' breach and resulting
liability for consequential damages and § 3629 attorneys' fees and interest. *See Barnes v.*
*Oklahoma Farm Bureau Mutual Ins. Co.,* 11 P.3d 162, 175 (Okla. 2001); *Newport v. USAA, supra,* 11
P.3d 190, 204 (Okla. 2000); *see also* Plaintiff's Opposition to Defendant J.D. Power and Associates'
Motion for Summary Judgment (Doc.121), at 18-19; Plaintiff's Opposition to Mitchell's Motion for
Summary Judgment (Doc.128), at 15-16.

lawsuit in no way unrings the  breach of contract bell, or insulates Farmers from liability for Plaintiff's consequential damages resulting from that breach.

### B. Genuine Issues of Fact Exist Regarding Farmers' Unreasonable Conduct, Precluding Summary Judgment on Plaintiff's Bad Faith Claim.

The essence of Farmers' Motion appears at page 25 of its brief, where Farmers asserts that it "reasonably believed" that the WCTL system "properly adjusted for the diesel engine and the condition of the [Hamon] vehicle."  Farmers necessarily asserts that there is no material issue of fact as to whether its purported reliance on the WCTL report was reasonable.   Yet the extensive factual record in the case demonstrates beyond question that there is a jury issue as to the reasonableness of Farmers' conduct, and whether it acted in bad faith under Oklahoma law. There is a vast difference between a defense to the bad faith claim at trial and defense as a matter of law entitling Farmers to summary judgment.   The legal standard, which must be applied to Farmers' Motion is as follows:

> [T]he essence of the intentional tort of bad faith with regard to the insurance industry is the insurer's unreasonable, bad-faith conduct, including the unjustified withholding of payment due under a policy, and if there is conflicting evidence from which different inferences may be drawn regarding the reasonableness of insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact by consideration of the circumstances of each case.

*McCorkle v. Great Atlantic Ins. Co.,* 637 P.2d 583, 587 (Okla. 1981).

The Tenth Circuit expressly applied this standard recently when it upheld a trial court's denial of an insurer's motion for summary judgment on the plaintiff insured's bad faith and punitive damages claims, based on a purported "legitimate dispute" defense (which, contrary to Farmers' suggestion, cannot act as an impenetrable shield against a valid claim of bad faith or unreasonable conduct). *Haberman v. the Hartford Ins. Group*, 443 F.3d 1257, 1262-63 (10th Cir.

2006).[13]  In *Haberman,* the Tenth Circuit rejected the insurer's arguments that where there is a legitimate dispute (there, as to coverage) there can be no bad faith, quoting *McCorkle, supra*, at 587.[14]  The appellate court noted that, during the trial court proceedings, the plaintiff insured presented evidence suggesting the insurer ignored provisions of its own policy and ignored Oklahoma law, delaying plaintiff's medical payments until just weeks before trial.  *Id.* at 1270. Accordingly, the insurer's motion for summary judgment was properly denied.

---

[13] Farmers' statement at 25 that "the existence of a dispute over value is a defense to Mr. Hamon's bad faith claim" is incomplete and misleading.  Farmers suggests at 24 that *Conti v Republic Underwriters Ins. Co., 782 P.2d 1357 (Okla. 1989)* supports the proposition that it is never bad faith for an insurer to resort to a judicial forum to settle a legitimate dispute.  The *Conti* case does no such thing. The "general rule" articulated by the *Conti* court merely states that it is not *per se* bad faith for an insurance company to resort to a judicial forum to settle claims, <u>if such conduct is reasonable</u>.  *See Conti*, 782 P.2d at 1358 (recognizing that the essence of a bad faith claim is the <u>unreasonableness</u> of the insurer's conduct).  The *Conti* court acknowledged that where there is conflicting evidence, what is reasonable, including resorting to a legal forum, is "*always* a question to be determined by the trier of fact". *Id.* at 1361 (emphasis in the original).

[14] In addition to *McCorkle*, cited by Farmers at 23, most of the bad faith cases cited by Farmers in its own Motion at 23-26 actually <u>confirm</u> the principle that summary judgment is inappropriate for Plaintiff's bad faith claims. *See Newport v. USAA*, 11 P.3d 190, 195 (Okla. 2000) (reasonableness of insurer's conduct  is "always a question to be determined by the trier of fact"); *Conti v. Republic Underwriters Ins. Co.*, 782 P.2d 1357, 1360-61 (Okla. 1989) (if there is conflicting evidence as to the reasonableness of insurer's actions "then what is reasonable is *always* a question to be determined by the trier of fact by a consideration of the circumstances in each case."), quoting *McCorkle, supra*, at 1269 (emphasis in the original);  *Thompson v. Shelter Mutual Ins.,* 875 F.2d 1460, 1462 (10th Cir. 1989) (same); *Claborn v. Washington Nat'l Ins. Co.*, 910 P.2d 1046, 1049 (Okla. 1996) (same); *City National Bank and Trust Co. v. Jackson National Life Ins.*, 804 P.2d 463, 468 (Okla. 1991) (same); *Price v. Mid-Continent Casualty Co.*, 41 P.3d 1019, 1021 (Okla. Civ. App. 2001) (same); *Peters v. American Income Life Ins. Co.*, 77 P.3d 1990, 1097 (Okla. Civ. App. 2002) (same).  Moreover, <u>all</u> the bad faith cases cited by Farmers that denied insurer bad faith claims are completely distinguishable.  Those cases involved either legitimate coverage disputes or other purely legal questions, the arson defense, misrepresentations by the insured in the policy application, or a total lack of conflicting evidence from which differing inferences as to the reasonableness of insurer's conduct could be drawn. None of Farmers cases involve analogous facts to those presented here, which allow a jury inference that Farmers acted in bad faith.

The cases are legion that, where evidence is conflicting as to the reasonableness of an insurer's actions from which different inferences may be drawn in a bad faith case, "then what is reasonable is <u>always</u> a question to be determined by the trier of fact". *McCorkle v. Great Atlantic ins. Co*., 637 P.2d 583, 587 (Okla. 1981) [cited by Farmers at 23] (emphasis supplied).[15]

In the same way, the reasonableness or unreasonableness of an insurer's reliance on advice of a third party, whether the insurer's counsel, adjuster or other independent valuation expert or entity such as Mitchell and Power in adjusting insured's claim is a question for the jury to determine, based on the surrounding facts and circumstances. *See, e.g., Barnes v. Oklahoma Farm Bureau Mutual Ins. Co*., 11 P.3d 162 (Okla. 2000) (holding that reliance on counsel's advice in denying a claim is subject to the reasonableness standard to be determined by the jury, and is but one factor for the jury to consider in considering a bad faith claim); *see also Johnson v. Government Employees Ins. Co.,* 2008 WL 3927469, at *4 (W.D.Okla.) (same). The principle would apply equally to "advice" from other third parties such as third party evaluators or experts.[16]

---

[15] *See also, e.g., Benson v. Leaders Life Ins. Co.,* 339 P.3d 843 (Okla. 2013); *Badillo v. Mid Century Ins. Co.,* 121 P.3d 1080, 1093 (Okla. 2005); *Barnes v. Oklahoma Farm Bureau Mutual Ins. Co.,* 11 P.3d 162 (Okla. 2000); *McCoy v. Oklahoma Farm Bureau Mutual Ins. Co.*, 841 P.2d 568 (Okla. 1992); *Beers v. Hillory,* 241 P.3d 285, 295 (Okla. Civ. App. 2010); *Alsobrook v. National Travelers Life Ins. Co*., 852 P.2d 768, 769 (Okla.  Civ. App., 1993); *Baker v. Union Fidelity Life Ins. Co.,* 2010 WL 2721387, at *7 (N.D.Okla.); *Tomlinson v. Combined Underwriters Life Ins. Co.,* 708 F.Supp.2d 1284, 1294 (N.D.Okla.2010); *Wirtz v. State Farm Mutual Automobile Ins. Co*., 2009 WL 2163617, at *6 (W.D.Okla); *Kirkes v. Guideone Mutual Life Ins. Co.,* 2009 WL 395254, at *5 (W.D.Okla.); *State Farm Mutual Ins. Co*., 2006 WL 2265505, at *6 (N.D. Okla.).

[16] *See, e.g., Guajardo v. Liberty Mutual Ins. Co*., 831 S.W.2d 358, 365 (Tex. App. 1992)(whether an insurer's reliance on its own expert's opinion regarding coverage is reasonable is a question of fact for the jury), citing *Aranda v. Ins. Co. of N. America*, 748 S.W.2d 210, 212-13 (Tex. 1988) and *Arnold v. National County Mutual Fire Insurance Co*., 725 S.W.2d 165, 167 (Tex. 1987).

Oklahoma has long imposed an implied-in-law duty on the part of an insurer such as Farmers to act in consummate good faith and to deal fairly with its own insureds to assure that policy benefits are received. *Christian v. American Home Assurance Co*., 577 P.2d 899, 901 (Okla. 1977). The essence of a claim that this implied-in-law duty has been breached, a bad faith claim, is the reasonableness or unreasonableness of an insurer's conduct in adjusting a claim on behalf of its insured. *Newport v. USAA*, 11 P.3d 190, 194 (Okla. 2000), citing *McCorkle v. Great Atlantic Ins. Co.*, 637 P.2d 583, 587 (Okla. 1981). In fact, the *Christian* case, cited by Farmers at 23, established that an insurer's obligation of good faith includes the duty not just to pay money on a claim, but to do so promptly, i.e., "to make <u>immediate</u> payment of claims". *Christian*, 577 P.2d at 903 (emphasis supplied) ("[U]nwarrranted delay precipitates the precise economic hardship the insured sought to avoid by purchase of the policy"); *see also, e.g., Buzzard v. Farmers Ins. Co*., 824 P.2d 1105, 1109 (Okla. 1991) [cited by Farmers at 29] (upholding the  jury verdict in favor of insureds on their bad faith and punitive damages claim and stating "A claim <u>must be paid promptly</u> unless the insurer has a reasonable belief that the claim is legally or factually insufficient."); *Rose v. Prudential,* 992 F.2d 1223, at *2 (10th Cir. 1993) (law requires prompt payment of insurance claims) (emphasis supplied).[17]

---

[17] Farmers' argument at 25 that it properly invoked the formal appraisal process contained in the Policy, and ultimately paid the appraised value for the Hamon vehicle, and thus that it cannot be guilty of bad faith is contrary to the facts and Oklahoma law.  The appraisal provision in the Farmers-Hamon policy (the "Policy") required each party to appoint a disinterested appraiser, and then to select a third "umpire" to decide any difference in the resulting appraised values. This never occurred. In fact, the issue of an appraisal was not raised by Farmers until well after Farmers breached the Policy by refusing to pay the ACV of the Hamon vehicle, and Hamon was forced to file suit. So even had Farmers properly invoked the appraisal provision—which it did not do—it would have been untimely.  And Farmers cites no authority for the proposition that an untimely appraisal can cure a breach of contract.  Moreover, under clear Oklahoma law, an insurer's post-litigation conduct is simply not relevant to a bad faith claim.  *Walker v. Progressive Direct Ins. Co.,* 472 Fed. Appx. 858 (10th Cir. 2012); *Roesler v. TIG Ins. Co*., 251 Fed. Appx. 489, 498 (10th Cir. 2007); *Hale v.  A.G. Ins. Co*., 138 P.3d 567, 571-72 (Okla. Civ.

In addition to being paid promptly, the amount paid must be within the range of the value assigned to the claim as a result of a reasonable investigation. In other words, a "low ball" offer will constitute a breach of the obligation of good faith. *See Newport v. USAA*, 11 P.3d 190, 195 (Okla. 2000) [cited by Farmers at 23] (upholding jury's verdict in favor of insured on bad faith and punitive damages claims as a result of defendant insurer's "low ball" offer); *see also Miller v. Liberty Mutual Fire Ins. Co.,* 191 P.3d 1221, 1227 (Okla. Civ. App. 2008) (reversing trial court's grant of summary judgment to defendant insurer on insured's bad faith claim because disputed material facts existed on whether insurer's "low ball' offer was reasonable, finding the plaintiff insured presented sufficient evidence to support an inference that the insurer's "low ball" offer, resulting from the insurer's omitting or ignoring different elements of the insured's damages, was unreasonable and a breach of the obligation of good faith).

Applying these authorities to the instant case, summary judgment is patently improper here, where substantial evidence exists from which the jury may infer that Farmers' conduct in adjusting Plaintiff's claim was unreasonable. Expert testimony demonstrates that the WCTL system was invalid, and that Farmers either knew it was invalid, or failed to investigate its validity. Evidence exists that Farmers intentionally chose the WCTL system because it allowed for "aggressive conditioning" and systemic undervaluing of total loss claims. The evidence shows that Farmers intentionally ignored the NADA valuation contained in its Hamon claim file, which was almost double that promulgated by the invalid WCTL system. Farmers used patently

---

App. 2006) ("[T]he analysis in bad faith cases indicates the cutoff for relevant evidence is the date of payment or denial of a claim."); *see also Springfield Fire & Marine Ins. Co.,* 156 P. 673 (Okla. 1916) (noting the "well settled" rule in Oklahoma that provisions of an insurance policy, including the appraisal provisions, will be construed most strongly against the insurer, and holding that <u>what constitutes a reasonable time to invoke an appraisal provision is a question of fact for the jury</u>).

non-comparable gas vehicles, rather than diesel vehicles like that in the Hamon vehicle, in adjusting the claim, resulting in a substantial diminishment in claim value.  In short, abundant evidence exists from which a jury may determine that Farmers' "Delay, Deny, Defend" tactic in adjusting the Hamon claim were unreasonable and that its exclusive reliance on the WCTL valuation was also unreasonable and not a "legitimate dispute".[18]

Because under clear Oklahoma law what is reasonable is *always* a question of fact to be determined by the trier of fact by a consideration of the circumstances in each case, Farmers' attempt to obtain judgment as a matter of law on Plaintiff's bad faith claim is without merit and must be denied.

---

[18]Even Farmers' own cases cited at 23-26 addressing bad faith demonstrate the barrenness of its argument.  For instance, *Christian v. American Home Assurance Co.*, 577 P.2d 899 (Ola 1978), which Farmers rightly cites as establishing the tort of bad faith in Oklahoma, reversed the trial court's grant of summary judgment to insurer on insured's bad faith claim.  Likewise, *McCorkle v. Great Atlantic Ins. Co.*, 637 P.2d 583 (Okla. 1981) affirmed the jury's award of damages for bad faith and associated punitive damages against an insurer for unreasonably withholding proper payments due under the policy.  *Newport v. USAA*, 11 P.3d 190 (Okla. 2000), the Oklahoma Supreme Court on certiorari held unequivocally that whether an insurer's "low ball" offer and refusal to make full payment constituted bad faith (and whether punitive damages were warranted) were questions for the jury. *Buzzard v. Farmers Insurance Co., Inc.*, 824 P.2d 1105 (Okla. 1991) upheld the jury verdict in favor of insureds for actual and punitive damages associated with the insurer's bad faith.  And, most notably, *Thompson v. Shelter Mutual Ins.*, 875 F.2d 1460 (10th Cir. 1989), which Farmers cites at 24 for the proposition that it is not bad faith, per se, for an insurer to resort to a judicial forum to settle a legitimate dispute, actually affirmed the jury verdict finding bad faith on the part of the insurer for failing to pay additional living expenses on the strength of all the evidence, including evidence of unreasonable delay.  Notably, the *Thompson* court found all plaintiff's evidence to be probative and relevant because "the jury may be shown the entire course of conduct between the parties to arrive at a determination of whether [the good faith] standard had been breached or not." *Thompson*, 875 F.2d at 1462 (citation omitted).  The *Thompson* court also noted that "[u]nwarranted delay precipitates the precise economic hardship the insured sought to avoid by purchase of the policy." *Id.*, quoting *Christian*, 577 P.2d at 903.

### C. Genuine Issues of Fact Exist Regarding Plaintiff's Fraud-Based Claims Against Farmers, Precluding Summary Judgment.

Farmers misconstrues Plaintiff's fraud claim. Plaintiff does not allege reliance on the Hamon Report, which he obviously immediately disagreed with. Rather, the fraud and suppression claim relates to the reissuance of the Farmers' Policy on October 25, 2013, immediately before the total loss. Farmers' sole attack on Plaintiff's fraud and suppression claim is that the promise contained in the Policy is a future promise. However, it is clear that a future promise may be fraudulent if the defendant did not intend to keep the promise when made.[19]

The promise to properly pay covered claims is inherent in every insurance policy. No person would purchase an insurance policy if the insurer disclosed that it did not intend to properly pay covered claims. Farmers does not challenge or attack in any respect the reliance alleged by Hamon in his Third Amended Complaint relating to the proper payment of claims under the Policy. See Complaint, at 46(c) relating to fraud as to the Policy and Paragraphs 50-55 relating to suppression and concealment as to the Policy. [Doc. 39] There is substantial evidence that Farmers' scheme to use WCTL to underpay total loss claims had been in effect for more than a year. The jury would clearly be authorized to find, based upon such evidence, that, when Farmers reissued the Policy to Plaintiff, Farmers did not intend to properly adjust and pay a future total loss claim.

---

[19] Farmers' reliance at 28 on *Citation Co. Realtors v. Lyon*, 610 P.2d 788, 790 (Okla. 1980) for the proposition that "a fraud claim cannot be predicated upon mere failure to perform a promise to do a future act" is a distortion of the ruling in that case. *Lyons* clearly states that fraud can indeed be predicated upon a failure to perform a future act if the intent of the promisor at the time of the promise was to do otherwise. *Lyon*, 610 P.2d at 790 ("Oklahoma follows the view that fraud can be predicated upon a promise to do a thing in the future when the intent of the promisor is otherwise."), quoting *McLean v. S.W. Casualty Co.*, 159 P 660 (Okla. 1916).

**D.   Plaintiff's Conspiracy Claim Is Due To Be Determined By the Jury.**

Farmers cites a number of cases, primarily in the defamation context, that dismissed plaintiffs' conspiracy claims at the pleadings stage because of a wholesale lack of evidence to meet the *Twombly/Iqball* plausibility standard. Motion, at 26-27.  That standard is not applicable here.  (Indeed, the Court previously denied motions to dismiss the conspiracy claim filed by Power and Mitchell. [Docs. 69 and 70]).  Thus, the cases cited by Farmers dismissing conspiracy claims at the pleadings stage are inapposite and cannot support its Motion.  Moreover, based on the Affidavit of Dr. Norma Hubele, Exh.5, a jury would be authorized to find that the WCTL methodology is statistically invalid, and that Farmers conspired with Mitchell and Power to use the invalid WCTL product to undervalue Hamon's claim in order for Farmers to save money. Once again, when such evidence exists and facts are in dispute, the existence of a conspiracy is a question of fact for the jury, precluding summary judgment. *Sigma Resources, Inc. v. Norse Exploration, Inc.,* 852 P.2d 764 (Okla. App. 1993).

**E.   Whether to Award Punitive Damages Is a Question of Fact for the Jury.**

Plaintiff does not dispute Farmers' statement in its Motion at 28-29 that "a punitive damages award in a bad faith case is not automatic, but rather is governed by the standard applicable in other tort cases."  Motion at 28-29.  However, what Farmers fails to mention, is that whether to award punitive damages under 23 Okla. Stat. § 9.1, Oklahoma's controlling punitive damages statute, is yet another question of fact for the jury. 23 Okla. Stat. § 9.1 (notably titled "Punitive damages awards by jury" and expressly providing that it is for the jury to determine whether to award punitive damages -- "In an action for the breach of an obligation not arising from contract, the jury, in addition to actual damages, may, …award punitive damages for the sake of example and by way of punishing the defendant based upon the following

30

factors…")(emphasis supplied).[20]  Moreover, the fact-intensive list of factors that the jury must consider in making a punitive damages award make plain that summary judgment on Plaintiff's punitive damages claim is improper. *Id.*

The cases cited by Farmers are distinguishable and lend no support to its argument that Plaintiff's punitive damages claim claims may be withheld from the peculiar province of the jury.  In fact, most of the cases cited by Farmers in connection with Plaintiff's punitive damages claim, Motion at 28-29, do not even involve insurer bad faith, and not one of the cases denied a punitive damages claim on summary judgment "as a matter of law".

Because substantial evidence exists that supports the inference that Farmers used the invalid WCTL system intentionally to drive down the value of Hamon's and other total loss insureds' claims, and that it recklessly disregarded and failed to investigate whether the WCTL system was statistically invalid, Plaintiff's punitive damage claim is a question of fact that must be submitted to the jury.

## IV.   CONCLUSION

Plaintiff's breach of contract claim is subject to Plaintiff's prior and still pending motion for partial summary judgment and for prejudgment interest and attorneys' fees [Doc. 159], which is due to be granted for all the reasons contained in that motion and supporting brief and in this

---

[20]*See also, e.g., Barnes v. Oklahoma Farm Bureau Mutual Ins. Co.,* 11 P.2d 162 (Okla. 20001) ("A punitive damage award lies peculiarly within the province of the jury and will not be casually interfered with on appeal…"--  upholding trial judge's submission of punitive damages issue to the jury, as well as the jury's award of $1.5 million in punitive damages against the defendant insurer for bad faith)(emphasis supplied); *Buzzard v. Farmers Ins. Co.,* 824 P.2d 1105, 1116 (Okla. 1992); *Haberman v. The Hartford Ins. Group,* 443 F.3d 1257, 1271 (10th Cir. 2006), citing *State ex rel. Polution Control Coordinating Board v. Kerr McGee Corp.,* 619 P.2d 658, 865-66 (Okla. 1980); *Spaeth v. Union Oil Co. of Calif.,* 762 F.2d 865 (10th Cir. 1985); *Capstick v. Allstate Ins. Co.,* 998 F.2d 810, 823 (10th Cir. 1993); *Davis v. Mid-Century Ins. Co.,* 2000 WL 1140302 (W.D. Okla.).

brief; thus, Farmers' Motion for Summary Judgment on Plaintiff's breach of contract claim is due to be denied.  Moreover, Plaintiff has produced substantial evidence on all of his remaining claims against Farmers, and thus each one of those remaining claims is due to be presented to the jury under clear Oklahoma law.   Accordingly, Farmers' Motion is due to be denied in its entirety.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests the Court to deny Farmers' Motion and to allow each of Plaintiff's claims against Farmers to proceed to trial, and to award such other and further relief as the Court deems appropriate.

Respectfully submitted,


/s/ Jonathan H. Waller
JONATHAN WALLER, ASB 0725-L53J
Waller Law Office, PC
2001 Park Place Suite 900
Birmingham, AL 35203
jwaller@waller-law.com
(205) 313-7330
(205) 313-7331 (direct)

And

MARK H. COLBERT, OBA #10045
Colbert Law Offices
200 Stanley Street S.W.
P.O. Box 2169
Ardmore, Oklahoma 73402
colbertlawoffices@yahoo.com
(580) 226-1911
(580) 226-1907 (facsimile)
*Attorneys for Plaintiff Tim Hamon*

## CERTIFICATE OF SERVICE

I hereby certify that on January 8, 2016, I electronically transmitted the above and foregoing document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

- Mark H. Colbert: colbertlawoffice@yahoo.com

- Jonathan H. Waller: jwaller@waller-law.com

- Robert H. Taylor: rtaylor@trsvlaw.com

- Neil D. Van Dalsem: nvandalsem@trsvlaw.com

- Ashley M. Bibb: abibb@trsvlaw.com


    /s/ Jonathan H. Waller         
Of Counsel